IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 8, 2005 Session

## JEROME WILLIAM DEVEREAUX v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Jefferson County**
**No. 18,683     O. Duane Slone, Judge**

_____

**No. E2004-01891-CCA-R3-PC Filed June 8, 2005**

_____

The petitioner, Jerome William Devereaux, pled guilty in the Jefferson County Circuit Court to attempted rape of a child and received a sentence of twelve years incarceration in the Tennessee Department of Correction, with release eligibility after service of thirty percent of his sentence. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective. The post-conviction court dismissed the petition. The petitioner appeals the denial, arguing that his counsel was ineffective in his advice concerning the petitioner's plea and that the trial court's imposition of a twelve-year sentence violated the dictates of Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004). Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which J.C. MCLIN, J., joined. JOSEPH M. TIPTON, J., filed a dissenting opinion.

Jeffery S. Schaarschmidt, Chattanooga, Tennessee, for the appellant, Jerome William Devereaux.

Paul G. Summers, Attorney General and Reporter; and Renee W. Turner, Assistant Attorney General; Al Schmutzer, Jr., District Attorney General; and Charles L. Murphy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I. Factual Background

The proof at the petitioner's post-conviction hearing revealed that the sixty-year-old petitioner was originally indicted in Knox County for rape of a child. The victim was his five-year-old granddaughter. At the hearing, the petitioner's trial counsel recalled that the Knox County District Attorney General's office offered the petitioner the opportunity to plead guilty to aggravated sexual battery in exchange for a sentence of 7.2 years as an especially mitigated offender, with

release eligibility after service of one hundred percent of the sentence. After earning the maximum possible sentencing credits, the petitioner could have been eligible for release after serving eighty-five percent of his sentence.[1] Upon the advice of counsel, the petitioner rejected the plea offer and elected to proceed to trial. Trial counsel explained that he was aware that the offense had actually occurred in Jefferson County; therefore, he was "playing for the fumble" on the issue of venue. Counsel hoped that Knox County would proceed on the charges until jeopardy attached, then the petitioner could not be prosecuted on the charges.[2]

While the Knox County charge was pending, counsel had the petitioner evaluated by Dr. Dianna McCoy, a licensed psychologist practicing in Knoxville. The evaluation was performed in anticipation of a future parole hearing. However, counsel never received a report from Dr. McCoy. Despite the lack of information from Dr. McCoy, counsel anticipated that Dr. McCoy would testify at a future parole hearing that the petitioner, in compliance with Tennessee Code Annotated section 40-35-503(c) (2003), was not at risk to reoffend.

Before trial occurred in Knox County, the Knox County District Attorney General's office learned that the offense had occurred in Jefferson County; thus, the offense was being prosecuted in the wrong county. Accordingly, the Knox County District Attorney General's office sent the information regarding the offense to the Jefferson County District Attorney General's office.

Prior to a Jefferson County indictment on the charge of rape of a child, the petitioner and his counsel engaged in plea negotiations with the Jefferson County District Attorney General's office. The State submitted alternative plea offers. First, the State reiterated the Knox County offer of a guilty plea to aggravated sexual battery in exchange for a sentence of 7.2 years as an especially mitigated offender with release eligibility after service of one hundred percent of the sentence. If the petitioner earned the maximum amount of sentencing credits, he could potentially be released after serving eighty-five percent of the sentence. Alternatively, the State offered to allow the petitioner to plead guilty to attempted rape of a child in exchange for a sentence of twelve years with release eligibility after service of thirty percent of the sentence. The petitioner ultimately agreed to be charged by information, and he accepted the guilty plea to attempted rape of a child with the agreed twelve-year sentence.

Trial counsel recalled that the petitioner was an intelligent individual and had been a successful businessman prior to his retirement. Counsel stated, "I tried to provide all of the information that I could for him. Because the decision was his to make." The petitioner told counsel "when we first met that he was not going to put his granddaughter through a trial. He was adamant about that fact. And he wanted me to obtain the least amount of punishment as possible. He told me he would not put her through to trial." Moreover, counsel was aware that the petitioner had given

---

[1] See Tenn. Code Ann. § 40-35-501(i)(1) and (2) (2003).

[2] State v. Hutcherson, 790 S.W.2d 532, 534-35 (Tenn. 1990), provides that failure to try a case in the proper venue does not preclude the State from seeking a conviction in the proper forum.

a statement to police regarding the sexual abuse of his granddaughter.  Counsel opined that if the case had gone to trial, the statement would have supported at least one count of rape of a child and multiple counts of aggravated sexual battery.  Counsel believed that if the petitioner had received the minimum sentence of fifteen years for rape of a child, the sentence would have effectively been a life sentence for the petitioner because he would have to "flatten" the sentence.

Trial counsel testified that on many occasions he discussed with the petitioner the terms of both guilty plea offers.  Trial counsel explained to the petitioner that he would have to "flatten" the 7.2 year sentence, but he would possibly be eligible for release on the twelve-year sentence after serving thirty percent of the sentence.  Further, counsel recalled telling the petitioner that he could possibly earn additional credit for time served on the twelve-year sentence.  Specifically, counsel believed that the petitioner could earn sixteen days additional credit for every thirty days the petitioner served.  Counsel stated that "[t]he 16 days for every 30 days is my - was my understanding at the time, the amount of credit to be received.  And, of course, all of that is contingent upon [the petitioner's] completing the programs and maintaining good behavior.  And that was explained to him.  None of this is automatic."  Trial counsel stated that the petitioner understood that he was not guaranteed early release.

Dr. Clarence Sexton, pastor of Temple Baptist Church in Powell, testified that the petitioner sought his advice concerning which plea to accept.  The petitioner told Dr. Sexton that there were two offers, and the one with the most years could result in the petitioner serving less time in confinement.  Dr. Sexton recalled, "[H]e explained to me that the time had been explained to him so that he could reduce this sentence that nobody ever did the full sentence.  And he could reduce the sentence.  And if he did 21 months, he would serve the full sentence.  It sounded a little strange to me, but that's what he told me."

The petitioner's wife, Jane S. Devereaux, testified that she was with the petitioner on the day of his guilty plea.  She alleged that trial counsel averred that the petitioner would received "two-for-one jail credit," resulting in the petitioner having to serve only twenty-one months of his sentence in confinement.  However, she acknowledged that during the guilty plea hearing, the petitioner was informed that he would be required to serve a sentence of twelve years with release eligibility after serving thirty percent of his sentence.  Additionally, she acknowledged that the statements by the trial court made apparent the possibility that the petitioner might not be released from confinement before the expiration of his sentence.

Next, the petitioner's son, Jerome Devereaux, Jr., testified that he was with the petitioner on the day of his guilty plea.  Trial counsel explained to the petitioner, "'This is the deal that you're going to take.  It's the – the 12 year where you've got to serve 30%. . . .  You should get credit a day for two days time served. . . .  So it should be 21 months, you're in and out."

The victim's mother, Tina Marie Devereaux, testified that the petitioner told her that he was accepting a sentence of twelve years which he would be able to "flatten" in twenty-one months.  Distraught, she called the Jefferson County District Attorney General's office.  An assistant district

attorney general told her that he did not see how the petitioner could be released from confinement after serving only twenty-one months.

Finally, the petitioner testified that trial counsel

> never explained any of the charges, what they were. He just . . . told me that there was a 7 year plea and a 12 year plea. And he said the 12 year plea was at 30%. He never told me what the seven year plea was. But he told me the 12 year plea was at 30%.

> And he said – and he sat there with his little calculator, because he's not good with math, and he punched the buttons and he said there'd be 42 months you'd be eligible for parole. But since the State is giving 2-for-1, you'll be eligible for parole in 21 months.

> He also told me at the same time that he had a plan for the parole hearing whereas we had a good chance of getting parole without any problem.

The petitioner contended that counsel never informed him that he would have to be evaluated pursuant to Tennessee Code Annotated section 40-35-503(c) prior to release to determine his risk to again commit sexual offenses.[3]

The petitioner maintained that after he was transferred from the Jefferson County Jail to the Tennessee Department of Correction, he met with a counselor who informed him that "they don't give parole to sex offenders." Additionally, an "institutional parole officer" told the petitioner that his chances of receiving parole were "slim to none."

The petitioner stated that trial counsel had "figured that 30% of the 12 years was 42 months, and he cut that in half because he said the State was giving 2-for-1. Be 21 months." After arriving at the Tennessee Department of Correction, the petitioner learned that the maximum additional credit he could earn was sixteen days a month.

---

[3] Tennessee Code Annotated section 40-35-503(c) provides:

> No person convicted of a sex crime shall be released on parole unless a psychiatrist or licensed psychologist designated as a health service provider has examined and evaluated such inmate and certified that, to a reasonable medical certainty, the inmate does not pose the likelihood of committing sexual assaults upon release from confinement. The examination and evaluation shall be provided by psychiatrists or licensed psychologists designated as health service providers whose services are contracted or funded by the department of correction or the board of paroles. The board shall consider any such other evaluation by a psychiatrist or licensed psychologist designated as a health service provider which may be provided by the defendant.

The petitioner admitted that he understood that there was a possibility that parole might not be granted, but he believed that he had a good chance to be released after serving twenty-one months of his sentence in confinement. He stated that counsel warned him that his release might take longer than twenty-one months. Nevertheless, the petitioner testified that he thought that he might have to serve "a couple of months" longer, not years. The petitioner acknowledged that the trial court informed him that he would receive a twelve-year sentence with release eligibility after serving thirty percent of the sentence. He maintained that he did not question the judge about the sentence because he believed his attorney. He also maintained that he would have accepted the 7.2-year sentence "if I had known anything about it."

At the conclusion of the hearing, the post-conviction court stated that "there's no question that there was an election by [the petitioner] to pursue a plea disposition" because of the petitioner's desire to prevent the victim from enduring a trial and also to receive lesser punishment. The post-conviction court found that the petitioner agreed to the twelve-year sentence because of the possibility that he would be released from confinement earlier than he would if he accepted the 7.2 year sentence. The court credited counsel's testimony that he gave the petitioner "all the information that he could provide to enable him to make an informed decision." Specifically, the post-conviction court found that counsel informed the petitioner that "the release eligibility date was just that. That it was an eligibility date, and that there was no guarantee of release." The post-conviction court found that there was no evidence that sex offenders are not awarded parole. Additionally, the court noted that the petitioner was informed at the guilty plea hearing that he would receive a twelve-year sentence with release eligibility after serving thirty percent of his sentence.

The post-conviction court observed that trial counsel "advised [the petitioner] that 21 months was a likely time for a parole hearing, and that he was confident that he could bring proof forward, and that there was a strong possibility of release. But that there was no guarantees." The post-conviction court found that the petitioner, with this information, made a knowing and voluntary decision to accept the twelve-year sentence. Thus, the post-conviction court dismissed the petition.

The petitioner appeals this decision, arguing that counsel was ineffective in giving him erroneous information regarding release eligibility and in recommending the twelve-year sentence. The petitioner also complains that counsel never informed him that he would have to be evaluated pursuant to Tennessee Code Annotated section 40-35-503(c) prior to any release. Further, for the first time on appeal, the petitioner contends that "[i]t was plain error for the court to accept a plea of 12 years, the maximum in the range for a B felony, when charging document did not mention any aggravating factors, and none were admitted to by the petitioner, during the plea, or in the alternative whether said 12 year sentence amounted to an unconstitutional excessive sentence."

## II. Analysis

A. Ineffective Assistance of Counsel

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069). We note that in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

The petitioner complains that the inaccurate advice of counsel regarding release eligibility led him to pleading guilty to an offense that required a longer sentence than the competing plea offer. The post-conviction court found that the petitioner's intention since the inception of the case had been to negotiate a plea agreement; therefore, the question became to which offense the petitioner would plead and the sentence the appellant would receive.

The post-conviction court found that counsel fully informed the petitioner regarding the terms of the alternative plea offers, including prospective release eligibility dates. Counsel clearly informed the petitioner that release eligibility was not guaranteed; however, under ideal circumstances, the petitioner would likely serve less time in confinement by taking the twelve-year sentence with the eligibility for release after serving thirty percent of his sentence.[4] Regardless, the petitioner was aware of the potential that he would have to "flatten" either sentence that he accepted. Weighing his options, the petitioner determined that the twelve-year sentence had the potential to offer him less time in confinement. The petitioner was repeatedly advised that he would have to serve at least thirty percent of his twelve-year sentence before becoming eligible for release. We conclude that the petitioner was not prejudiced by counsel's advice regarding potential release eligibility dates. See Jaco v. State, 120 S.W.3d 828, 832 (Tenn. 2003); see also Thomas M. McCormick v. State, No. M2004-00042-CCA-R3-PC, 2005 WL 711897, at *6 (Tenn. Crim. App. at Nashville, Mar. 28, 2005), application for perm. to appeal filed, (Apr. 28, 2005). Moreover, even if counsel failed to advise the petitioner that he would be required to undergo a psychological evaluation prior to release, we conclude that the petitioner has not demonstrated any prejudice he suffered by such failure. As our supreme court has noted, "[t]he required evaluation affects the likelihood of actual release, but it does not affect the release eligibility date." Jaco, 120 S.W.3d at 832. Therefore, the petitioner is not entitled to relief on this issue.

## B. Blakely

As his final issue, the petitioner contends that he pled guilty to attempted rape of a child, a Class B felony. See Tenn. Code Ann. §§ 39-13-522(b) (2003), 39-12-107(a) (2003). He agreed to a twelve-year sentence, the maximum sentence available for a Range I standard offender convicted of a Class B felony. See Tenn. Code Ann. § 40-35-112(a)(2) (2003). He argues that his sentence violates the dictates of Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), in that the "charging document did not mention any aggravating factors, and none were admitted to by the petitioner, during the plea, or in the alternative whether said 12 year sentence amounted to an unconstitutional excessive sentence." This complaint is without merit for a myriad of reasons.

Initially, we note that this court has previously explained that "the decision [in Blakely] cannot be read to require the State to charge the facts supporting application of possible sentencing factors in an indictment in addition to the elements of the offense." State v. Steven Nelorn Hampton, Jr., No. M2004-00704-CCA-R3-CD, 2005 WL 677279, *5 (Tenn. Crim. App. at Nashville, Mar. 24, 2005). Moreover, recently in State v. Edwin Gomez, __ S.W.3d __, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *22 (Tenn. at Nashville, Apr. 15, 2005), a majority of our supreme court found that, unlike the sentencing scheme discussed in Blakely, "Tennessee's sentencing structure does not violate the Sixth Amendment." Regardless, in the post-conviction setting, this court has previously

---

[4] If the petitioner accepted the 7.2 year sentence, and he earned the maximum credits available to achieve release eligibility after serving eighty-five percent of the sentence, the petitioner would first become eligible for release after serving a little over six years of his sentence. Whereas, with the twelve-year, thirty percent sentence, the petitioner first would be eligible for release after serving a little over three years and six months of his sentence, less any additional good time credits that the petitioner might earn.

held that <u>Blakely</u> does not establish a new watershed rule, and that <u>Blakely</u> does not apply retroactively to cases on collateral appeal. <u>See</u> <u>Donald Branch v. State</u>, No. W2003-03042-CCA-R3-PC, 2004 WL 2996894, at *10 (Tenn. Crim. App. at Jackson, Dec. 21, 2004), <u>application for perm. to appeal filed</u>, (Feb. 23, 2005); <u>see also</u> <u>Carl Johnson v. State</u>, No. W2003-02760-CCA-R3-PC, 2005 WL 181699, at *4 (Tenn. Crim. App. at Jackson, Jan. 25, 2005), <u>application for perm. to appeal filed</u>, (Mar. 30, 2005). Therefore, the petitioner is not entitled to relief.

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE